Robert K. Lewis, State Bar No. 016625
Amy M. Lewis, State Bar No. 027201
Christopher A. Treadway, State Bar No. 024171
**LEWIS AND LEWIS TRIAL LAWYERS, PLC**
28150 N. ALMA SCHOOL RD., SUITE 103-637
SCOTTSDALE, AZ  85262
Phone:  (602) 889-6666
Fax:       (602) 926-1477
rob@lewislawfirm.com
amy@lewislawfirm.com
chris@lewislawfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| SHANNON JAMES, a single woman, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| BULLHEAD CITY, an Arizona Municipal Corporation; MARK BAROLDY and JANE DOE Baroldy; husband and wife; EDWARD ARVIZU and JANE DOE ARVIZU; husband and wife; Does 1-10; | |
| Defendants. | |

Plaintiff Shannon James, for her Complaint, alleges as follows:

**PARTIES**

1. Plaintiff Shannon James is an adult female and resident of Mohave County, Arizona and was, at all times relevant to this Complaint, an officer with the City of Bullhead Police Department ("Bullhead PD").

2. Defendant Bullhead City is an Arizona municipal corporation.  At all times relevant hereto, Defendant Bullhead City had fifteen (15) or more employees for each

working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

3. Upon information and belief, Defendant Officer Mark Baroldy is a resident of Mohave, Arizona. At all times relevant hereto, Defendant Mark Baroldy was an employee of Bullhead PD and was acting within the course and scope of his employment. At all times material hereto, Defendant Baroldy was acting on behalf of the marital community with Jane Doe Baroldy.

4. Upon information and belief, Defendant Lt. Edward Arvizu is a resident of Mohave, Arizona. At all times relevant hereto, Defendant Lt. Edward Arvizu was an employee of Bullhead PD and was acting within the course and scope of his employment. At all times material hereto, Defendant Arvizu was acting on behalf of the marital community with Jane Doe Arvizu.

5. Defendants Does 1 through 10 are persons who may be partially or wholly at fault for causing Plaintiff's damages. The true names of these individuals are not known to Plaintiff at this time. These individuals harassed, abused, discriminated against, and/or retaliated against Plaintiff James. These individuals are employees of the Bullhead PD. These individuals may have contributed to or caused her injury and damage. Plaintiff will issue an alias summons and amend the caption or move for leave of court to file an amended Complaint if necessary once the true identities of these defendants become known to the Plaintiff.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.

2

and Section 1983. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination.

7. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, including violations of sex discrimination, gender discrimination, and retaliation on October 21, 2019. On or about February 2, 2021, Plaintiff received notification from the EEOC of her right to commence this litigation within ninety (90) days of receipt of said notice. (*See* Notice of Right to Sue Letter, Attached as Exhibit 1).

8. Plaintiff hereby files this action under Title VII within ninety (90) days after receipt of her "Notice Of Right to Sue" letter from the EEOC.

9. Plaintiff has satisfied all statutory prerequisites for filing this action.

10. Plaintiff files this action pursuant to Federal law including Title VII and Section 1983 and therefore, federal law preempts State law including the notice of claim requirements under A.R.S §12-820 et seq.

**GENERAL ALLEGATIONS**

11. Plaintiff incorporates by reference each and every one of her allegations previously set forth in this Complaint.

12. At all times material to this Complaint, James was an employee of Defendant Bullhead City with the Bullhead PD.

13. James began working with Bullhead PD in 2009 as a School Resource Officer ("SRO"). The City also employs two other SROs, Mark Baroldy and Emilio Marin. During the school year, the SROs are stationed at their assigned schools. When school is out of

session during the summer months, the three SROs are assigned to the "Boating Unit," where they patrol those portions of the Colorado River that are within the Department's jurisdiction. The Boating Unit is responsible for, among other duties, responding to calls for rescue and other assistance; administering first aid; investigating DUIs and other offenses; and issuing citations and making arrests where necessary.

14. Throughout her employment, Plaintiff James performed her duties in a satisfactory or above manner.

15. Prior to the 2018 boating season, James dated Baroldy. However, she stopped dating him prior to the start of the 2018 boating season. At all times material hereto, James and Baroldy were not together or romantically involved.

16. During the 2018 boating season, on June 7, 2018, James spoke with her supervisor Lt. Edward Arvizu about problems she was having with Baroldy. James advised Lt. Arvizu that Baroldy was making her take all of the calls dispatched while at the aid station, and was harassing and abusive towards her. She informed Lt. Arvizu that it was her belief that this was occurring because she had stopped dating him a year ago and that Baroldy was still upset about it. She informed Lt. Arvizu that Baroldy continued to try to ask her out on dates and pursued her romantically even though she repeatedly turned him down.

17. During James' conversation with Lt. Arvizu on June 7, 2018, Lt. Arvizu told her that he did not have time for the boating unit and had put Baroldy in charge because he had the most experience. This was the first time that James learned that Baroldy was put "in charge" of the boating unit. Lt. Arvizu then informed James that she needed to "suck it up," and that it can't always be "Shannon's way." The clear innuendo was that the problem that James was experiencing was attributed to the fact that she was a woman. James informed Lt. Arvizu that she only wanted to be treated the same as her male counterparts and did not

4

expect special treatment. She further told Lt. Arvizu that she was concerned that Baroldy was endangering her by refusing to back her up on dangerous calls for service in retaliation for not continuing a romantic relationship with him.

18. On one occasion, James was required to respond to a dangerous call without backup that involved an armed suspect. Baroldy did not provide James with back up putting her at risk. This was a dangerous call where the officer should have been given back up. Baroldy who was "in charge" did not provide James with backup which endangered her life. This was done in retaliation for her refusal to have a romantic relationship with him.

19. During a June 7, 2018 conversation, Lt. Arvizu informed James that he would talk to Baroldy about it.

20. On June 16, 2018, while James was at the aid station and a lifeguard that was working with the team that day was deciding which boat to get on, James suggested that the lifeguard ride with her because the lifeguard spoke Spanish and the other boating officer on the team, Officer Marin, also spoke Spanish, which would put both Spanish speakers in the same boat. Baroldy then stepped between James and the lifeguard and yelled at James that only he and Marin were going to have lifeguards on their boats, and walked away. The lifeguard told James that he thought Baroldy was out of line. This treatment was done in retaliation for James' refusal to have a romantic relationship.

21. Not allowing James to have a Spanish speaking lifeguard on her boat made her job more difficult and could potentially put her in danger as well an endanger the lives of members of the community when James was involved in calls to service.

22. James started feeling sick after the harassing and abusive interaction with Baroldy on June 16, 2018. She had to leave early that day and was unable to go to work the next day. She felt nauseous and dizzy, and she felt a pounding in her head.

23. As a result of Baroldy's harassing and abusive conduct, James experienced complex PTSD. She now sees a psychiatrist and a counselor for treatment. She now takes medications to help with anxiety, insomnia, inability to stay asleep, depression, and high blood pressure. James feared that Baroldy would continue to withhold assistance and resources to James in retaliation for her refusal of romantic advances. This jeopardized her safety.

24. On June 21, 2018, James spoke to Lt. Arvizu again about Baroldy's harassing and abusive behavior and unequal treatment. She told Lt. Arvizu that she was continuing to have issues with Baroldy and that Baroldy was not allowing her to have a lifeguard in her boat. She told Lt. Arvizu that she felt Baroldy's actions were in retaliation for her previous conversation with Lt. Arvizu. She told Lt. Arvizu that Baroldy was treating her differently and that it was inappropriate. She told Lt. Arvizu that he needs to deal with this situation. Lt. Arvizu did not do anything about it and told her that he doesn't have time to deal with her and that she can't keep coming to him with her concerns about Baroldy's harassing and abusive treatment. Lt Arvizu's refusal to address Baraoldy's conduct emboldened him and the harassment and abuse became more pervasive and severe. Arvizu's conduct, words and inaction is clear discriminatory animus towards James.

25. Lt. Arvizu told James that he would have a meeting with the entire boating team. Lt. Arvizu refused to address the problems with Baroldy directly. Lt. Arvizu was aware that there was a history between James and Baroldy and James reported abuse in retaliation for James' refusal to have a romantic relationship with Baroldy. Notwithstanding this notice, Arvizu continue to put Baroldy in a position of power and to supervise, monitor and evaluate James' work performance.

26. On June 27, 2018, Lt. Arvizu held a meeting with Baroldy, Marin and James. Lt. Arvizu tried to keep if off the record, but James insisted that this meeting be documented and made official. During the meeting Marin confirmed that Baroldy was treating James differently, and he was harassing and abusive. Baroldy responded that it was because of James' poor work performance which was not true.

27. After the meeting, Marin asked James why that meeting was all about her work performance when it was supposed to be about Baroldy's harassing and abusive behavior, and why she was being treated differently. The meeting was referred to as a "bitch fest." The problems that James was experiencing was attributed to that fact that she was a woman.

28. On June 28, 2018, James spoke with Lt. Trebes about what more she could do since Lt. Arvizu was not doing anything about Baroldy's behavior. Lt. Trebes said that he would talk to Chief Williamson about it. James later received a text message from Captain Desantis requesting to meet. She then starting having a panic attack, and sent a text message to Lt. Trebes asking him why the Captain wanted to meet with her. Lt. Trebes informed Ofc. James that the Captain had learned about the situation from someone else.

29. On June 28, 2018, Captain Desantis called a meeting with James and Lt. Arvizu. During the meeting, Captain Desantis captain asked Lt. Arvizu why he had not dealt with it. Lt. Arvizu told Captain Desantis that he did not deal with it because it was a personal issue for James. Captain Desantis told Lt. Arvizu that this needs to be addressed.

30. During the meeting, Captain Desantis asked Lt. Arvizu if there were any issues with James' work performance and Lt. Arvizu responded that there were none.

31. During the meeting, Captain Desantis told Lt. Arvizu that Baroldy was not to be in charge of the boating unit and that he was not to have any involvement in monitoring James' work.

7

32. On January 14, 2019, James received her yearly evaluation from Lt. Arvizu with low marks and a comment from Lt. Arvizu that the summer boating season was "troubled with personal issues." Lt. Arvizu made this comment despite being told by Captain Desantis that Baroldy's harassing and abusive conduct was not a "personal issue," but was an employment issue that needed to be addressed. James approached Lt. Arvizu about the comment and asked him to remove it since it was not correct, demeaning, and dismissive. Lt. Arvizu refused to remove it. James told Lt. Arvizu that she felt that she was being punished for complaining about Baroldy's harassing and abusive behavior and unequal treatment. She told Lt. Arvizu that she was concerned of more harassing and abusive behavior and unequal treatment from Baroldy because it was not properly addressed. Lt. Arvizu told James that she has to put up with it or find somewhere else to go.

33. The boating season for 2019 began on or about May 24, 2019 and Baroldy's harassing and abusive behavior and unequal treatment continued.

34. On June 2, 2019, Baroldy accused James of lying on her stat sheet to make it appear that she was doing more work than him even though she was not. Even though Captain Desantis told Lt. Arvizu that Baroldy was not to be involved in monitoring James' work, Baroldy continued to be involved in monitoring James' work as soon as the boating season began. Baroldy made a formal charge against James making accusations of dishonesty. This was done as a direct action to retaliate against James for rebuking Baroldy's romantic advancements.

35. On June 3, 2019, James filed a written complaint with Internal Affairs and Human Resources.

36. On June 6, 2019, James met with Captain Desantis and Lt. Arvizu and was told she would no longer have any contact with Baroldy other that work-related communications.

Despite this, the problems continued with Baroldy through the summer. She was not given supplies needed for the boat only to find that Baroldy was holding them. On several occasions, Baroldy withheld important work-related information from her to her detriment.

37. On October 6, 2019, James met with Lt. Harms regarding her complaint against Baroldy and Lt. Arvizu. Lt. Harm informed her that he would not handle the investigation. Lt. Harms informed James that he was unable to handle any investigations involving her.

38. On October 7, 2019, James was served by Lt. Harms with an administrative notice regarding Baroldy's accusation of her lying on her daily stat sheets. Lt. Harms was handling the investigation despite telling her the day before that he was unable to handle any investigation involving her.

39. On October 21, 2019, there was an incident that required a K-9 response unit. James attempted to use the established procedures in place for the incident. Lt. Arvizu refused to offer any assistance with this situation and instead belittled her.

40. On November 1, 2019, Lt. Arvizu held a staff meeting to discuss the incident with the K-9 response. During the meeting Lt. Arvizu was harassing and abusive towards James and belittled her. After the meeting several people that were in attendance told James that the matter should not have been discussed in front of the whole group. Several people asked why Lt. Arvizu was so mean to her and said that they thought Lt. Arvizu's behavior was inappropriate. Arvizu instigated a direct investigation against James stemming from the K-9 unit incident. A formal complaint was initially made against James. This was done with the specific intent to disqualify James from opportunities for advance and to directly or constructively expel her from the department.

41. On November 6, 2019, James was informed that her complaint against Baroldy with IA was not sustained.

42. On November 6, 2019, Lt. Harm informed James that the complaint against her with IA was not initiated even thought she was served with a complaint. She was never notified that it was closed.

43. On November 20, 2019, James received a PPR regarding the K-9 Incident.

44. On December 11, 2019, James received her 2019 evaluation.

45. On January 25, 2020, James submitted a response to her 2019 evaluation.

46. During the boating season of 2020, CPL. Watson was placed in charge of the boating unit. On one occasion, CPL. Watson and Sgt. Gillman, CPL. Watson's supervisor, observed Baroldy trying to intimidate James during a meeting by yelling at her to shut up and glaring at her. Both CPL. Watson and Sgt. Gillman had to stop him.

47. James received her 2020 evaluation showing that she exceeded expectations in several areas.

48. Because of the negative evaluations for 2018 and 2019 from Lt. Arvizu, James was not eligible to apply for a negotiator position in early 2021 which would have been an increase in pay. Lt. Arvizu's retaliation against James for reporting the harassing and abusive behavior and unequal treatment from Baroldy, and his negative evaluations, prevented James from promotion. The negative evaluations were done to disqualify James from this position and in fact did just that.

49. As a result of the negative reviews from Lt. Arvizu, James cannot apply for better positions or be promoted.

50. On several occasions, James indicated that the romantic advancements, harassing and abusive behavior, and unequal treatment was unwelcome.

51. On Several occasions, James indicated that she was being discriminated against and retaliated against because of her gender.

52. Defendants did not take appropriate action to stop the harassing and abusive behavior and unequal treatment.

53. Defendants did not take appropriate action to stop the discrimination and retaliation against her.

54. James alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.* and 29 CFR 1604.11 as outlined above.

55. Defendants have engaged in a pattern of gender discrimination and retaliation against James. James was treated differently because she was a woman.

56. Defendant Bullhead City is vicariously liable for its employees' actions including, but not limited to, the actions of Defendant Baroldy and Lt. Arvizu.

57. Plaintiff is informed and believes, and based thereon alleges, that in addition to the actions enumerated above, Bullhead City may have engaged in other discriminatory and retaliatory acts against her which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

58. The actions enumerated above are continuous violations of James' civil rights as a result of the Bullhead City's policies and procedures for handling issues of harassment and abuse to officers. Lt. Arvizu failed to adequate and properly address the situation, and actually retaliated against James. The harassing and abusive behavior and unequal treatment of James continued from 2018 through the filing of her complaint with the EEOC and beyond. The failure of Bullhead City to properly and adequate address the issues with Baroldy created a policy of discrimination.

59. Women have been historically under-represented in the Bullhead City Police Department. At times relevant to this complaint, there were only four female officers in a department of over 70 sworn officers.

60. Women are no given the same opportunities for advancement in the department and are unjustifiability passed over for advancement for promotion and pay increases.

61. At times relevant to this complaint, supervisors and management have stated, that "women do not belong in law enforcement." These statements were openly discussed in front of other female officers. The statements were made to voice a general policy of discouragement of hiring and advancement of female officers and to dispel female law enforcement officers.

**COUNT I – TITLE VII GENDER DISCRIMINATION/SEXUAL HARASSMENT**

62. Plaintiff incorporates by reference each and every one of her allegations previously set forth in this Complaint.

63. Defendants, through its agents, managers, or employees, unlawfully discriminated against James because of her gender.

64. Plaintiff, a female, is a member of the class of persons protected, which makes it an unlawful employment practice for an employer to discriminate against an employee because of gender.

65. At all times material hereto, James was qualified for her position as SRO and fulfilled the duties and responsibilities of her position without problem.

66. Because of her gender, James was subjected to adverse employment actions including, but not limited to, retaliation, unequal work load, exposure to dangerous situations, negative reviews, lack of promotion, and unwanted sexual advancements by employees put in a supervisor position over James.

67. Defendants' conduct raises the inference of discrimination.

68. Defendants' harassment, and retaliation including negative performance reviews against James negatively affected the terms and conditions of her employment. By placing and maintaining Baroldy in a supervisor position over James it enabled him to use his position of power to force or pressure James into a romantic and sexual relationship.

69. The environment at the department created a hostile work environment for James and other female officers.

70. There is no legitimate, nondiscriminatory reason for Defendants' actions.

71. James has been treated differently than similarly situated employees by Defendants in the terms and conditions of her employment because of her gender.  Gender was the motivating factor in treating James differently.

72. Similarly situated individuals outside her protected class were treated more favorably and the circumstances surrounding the adverse employment actions gave rise to an inference of discrimination. Members outside James protected class are provided with additional resources, and assistance.  Withholding of these resources has jeopardized James' health and safety causing extreme emotional upset, distress and post traumatic stress disorder.

73. Defendants, at all times material hereto, had actual and constructive knowledge of the conduct described above. Management looked the other way and did not take steps to limit or mitigate the harassment experienced by James. The harassment by Baroldy was severe, persistent, pervasive, and inescapable.  Management allowed this conduct to continue despite complaints of James and the acknowledgement of others that it was occurring. Management condoned the behavior.  Management's lack of action allowed the harassment to increase in its intensity and frequency.

74. Bullhead City failed to take all reasonable and necessary steps to eliminate gender discrimination from the workplace and to prevent it from occurring in the future.

75. As a result of Defendant's willful, knowing and intentional discrimination against her, James has suffered and will continue to suffer pain, humiliation, and emotional distress, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. James is therefore entitled to general and compensatory damages in amounts to be proven at trial, including front and back pay.

76. The harassment was allowed to continued and at times even increased in an attempt to expel James from the department.

77. As a further direct and proximate result of Defendants' violations as described, James has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Bullhead City and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to James.

## COUNT II – TITLE VII RETALIATION

78. Plaintiff incorporates by reference each and every one of her allegations previously set forth in this Complaint.

79. As herein alleged, Bullhead City, through its agents, employees, and representatives, illegally retaliated against James by subjecting her to unjust scrutiny, unwelcome and belittling comments, unequal work load, dangerous situations, negative reviews, and lack of promotion, solely because she reported the unwelcome sexual advancement, harassing, and abusive behavior and unequal treatment of Baroldy. Bullhead City had no legitimate business reasons for any such act. Each of said acts of retaliation are in violation of Title VII of the Civil Rights Act of 1964.

80. Defendants, through its agents, managers, or employees, unlawfully retaliated against James under federal statutes, codes, and ordinances.

81. James was retaliated against because she engaged in conduct that is protected by Title VII, including, but not limited to, reporting harassing and abusive behavior and unequal treatment based upon her gender.

82. James was subjected to adverse employment actions including, but not limited to, unequal work load, dangerous situations, negative reviews, and lack of promotion because she come forward about Baroldy's and Lt. Arvizu's conduct.

83. As a direct and proximate result of Defendants' willful, knowing, and intentional retaliation against her, James has suffered and will continue to suffer pain, humiliation, extreme and severe mental anguish and emotional distress.  Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial, including front and back pay.

84. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, James has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Bullhead City and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

## COUNT III – §1983

85. Plaintiff incorporates by reference each and every one of her allegations previously set forth in this Complaint.

86. James was entitled to certain civil rights including the right to be free from discrimination and retaliation.

87. As a result of Defendants' conduct as alleged above, James' civil rights were violated.

88. James engaged in conduct that is protected by Title VII, including, but not limited to, reporting harassing and abusive behavior and unequal treatment based upon her gender.

89. James' civil rights were violated by Defendant Bullhead City which was acting under the color of state law and the result of an unlawful policy or custom in addressing harassing and abusive conduct towards an officer.

90. Defendants' actions are the proximate cause of James' deprivation of rights.

91. As a result of Defendant's conduct, James has suffered and will continue to suffer pain, humiliation, and emotional distress, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. James is therefore entitled to general and compensatory damages in amounts to be proven at trial.

92. The disparate hiring and treatment of the department evidences a generalized policy of the department and City that, "women do not belong in law enforcement." The department and City have a policy to provide a preference to male job candidates for hiring and promotion.

93. The City has a policy to create a male culture that is calculated to discourage hiring and promotion of female officers and in fact does discourage the hiring of female officers and expels the ones that are ultimately hired. Here: The City had an express but unwritten policy that, when enforced, causes a constitutional deprivation; The City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; and James' constitutional injury was caused by a person with final policymaking authority.

94. Arvizu and Baroldy both caused and participated in a constitutional deprivation. Both Baroldy and Arvizu harassed, belittled, and instigated investigations to the conduct of James with the intent of depriving her of pay, advancement, continued employment, safety, enjoyment of the benefits of employment with the City and peace of mind. The actions and inactions of both Arvizu and Baroldy in fact did disqualify James for advancement. The primary motivation of Arvizu and Baroldy was to penalize and force James from the force. This was done because of James' gender.

95. Further direct and proximate result of Defendants' violations as described, James has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Bullhead City and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to James.

96. James seeks an award of punitive damages under §1983 as Defendants wrongful actions and omissions were compelled by evil motive and/or were intentional and/or malicious and involved reckless and callous indifference to the federally protected rights of James.

**WHEREFORE,** Plaintiff Shannon James requests that this Court enter judgment against Defendants in an amount which will compensate her for:

    a. Violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.* and 29 CFR 1604.11;

    b. For the general and special damages alleged above and which will be proven at trial;

    c. For medical expenses in an amount to be proven at trial;

d.     For Plaintiff's lost wages and diminished earning capacity for loss of opportunity of advancement and promotions;

e.     Back pay and future pay for loss of promotion and pay raises;

f.     For injunctive relief enjoining the City and Department from engaging and furthering its policy of discrimination and disparate treatment of female employees.

g.     For punitive damages as allowed by law;

h.     Trial by jury on all issues so triable;

i.     For Plaintiff's taxable costs and litigation expenses herein, including reasonable attorneys' fees; and

j.     For such other and further relief as this Court deems appropriate.

DATED this 30th day April, 2021.

**LEWIS AND LEWIS TRIAL LAWYERS, PLC**

By: /s/ Robert K. Lewis
     Robert K. Lewis, Esq.
     Amy M. Lewis, Esq.
     Christopher A. Treadway, Esq.
     *Attorneys for Plaintiff*

# Exhibit 1

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Shannon M. James
5711 S. Eland Dr
Fort Mohave, AZ 86426

From: Las Vegas Local Office
333 Las Vegas Blvd South
Suite 5560
Las Vegas, NV 89101

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2019-03624 | Donna M. Cutley, Investigator | (702) 553-4455 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ] Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Donna M. Cutley* for    02/02/2021

Tamara M. West,
Local Office Director

(Date Issued)

Enclosures(s)

cc: Aaron Arnson, Attorney
Pierce Coleman, PLLC
7730 East Greenway Road, Suite 105
Scottsdale, AZ 85260